NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3328
_____

MICHELLE BARNARD,

Appellant

v.

LACKAWANNA COUNTY;
BRIAN LOUGHNEY, in his individual capacity
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 15-cv-2220)
District Judge:  Hon. Malachy E. Mannion
_____

Submitted Under Third Circuit LAR 34.1(a)
June 13, 2017

Before:   JORDAN and KRAUSE, *Circuit Judges,* and STEARNS[*], *District Judge.*

(Filed: June 13, 2017)
_____

OPINION[**]
_____

[*] Honorable Richard G. Stearns, United States District Court Judge for the District of Massachusetts, sitting by designation.
[**] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

STEARNS, *District Judge*.

On May 14, 2015, Michelle Barnard, a Lackawanna County employee, joined in a sympathy strike in support of Lackawanna County Children & Youth unionized workers. Citing her participation in the strike, the County suspended Barnard without pay. Barnard brought suit under 42 U.S.C. § 1983, alleging First Amendment Retaliation (Count I) and Inadequate Supervision and Training (Count II). The District Court (Mannion, J.) granted the County's motion for judgment on the pleadings, holding that the collective bargaining agreement (CBA) between Barnard's union[1] and the County waived her right to participate in sympathy strikes. *Barnard v. Lackawanna County*, 194 F. Supp. 3d 337 (M.D. Pa. 2016). This appeal ensued.

Barnard first challenges the District Court's refusal to strike the five exhibits attached to the County's Answer, arguing that the exhibits do not constitute "written instruments" that may properly be incorporated in the pleadings. *See* Fed. R. Civ. P. 10(c). This Court reviews the denial of a motion to strike for abuse of discretion, *see In re Fine Paper Antitrust Litig.*, 751 F.2d 603, 604 (3d Cir. 1984), and finds no abuse. "[T]he types of exhibits incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence, specifically, contracts, notes, and other 'writing[s] on which [a party's] action or defense is based.'" *Rose v. Bartle*, 871 F.2d 331, 340 n.3 (3d Cir. 1989) (*quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1327, at 489). The five exhibits attached to the County's Answer are: (1) a certified copy of the CBA; (2)

---

[1] Barnard is a member of the American Federation of State, County and Municipal Employees District Council 87, AFL-CIO. *See* Grievance Form, Answer Ex. D (A103).

Barnard's disciplinary hearing notice; (3) the notice of Barnard's suspension; (4) Barnard's grievance form; and (5) Barnard's pay record for the relevant period. Because the exhibits concisely set out the parties' respective rights and the record of the underlying dispute, they are "documentary evidence" constituting "written instruments" of the kind contemplated by Rule 10(c), and we find no error in the Court's consideration of their contents.[2]

Barnard next argues that the District Court erred in entering judgment on the pleadings because the County's Answer, by denying certain allegations of the Complaint and asserting affirmative defenses, demonstrates the existence of factual disputes precluding brevis disposition at this early stage. This contention fails muster given the standard under which a defendant's Rule 12(c) motion is decided. "As with a Rule 12(b)(6) motion, this Court 'view[s] the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir. 2004) (*quoting Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)). The standard applies whether a defendant admits or denies an allegation of the Complaint.

Turning to a plenary review of the District Court's holding that the CBA waived Barnard's right to strike, *see id.*, we also find no error. Article 2 of the CBA, entitled "Strike Pledges," provides that

> [f]or the duration of this Agreement, or any extension thereof, none of the employees collectively or individually nor the Union, its officers, representatives or members, shall directly or indirectly cause, engage in,

---

[2] Barnard does not contest the authenticity or the accuracy of these exhibits.

3

authorize, instigate, aid, encourage, ratify or condone any strike or sympathy strike. . . . [F]ailure or refusal on the part of any employee to comply with any provision of the Article shall be cause for discipline and/or discharge, and only the question of fact as to whether an employee committed, performed or was responsible for any of the acts prohibited by this section, above, shall be subject to review through the grievance and arbitration procedure of this Agreement.

Answer Ex. A, Art. 2 § 1 (A56-57). Observing that the CBA was "the result of an arbitration that included argument and negotiation between attorneys representing the union and the County," and that "[a]ll the procedures followed throughout the collective bargaining process were prescribed by Pennsylvania state law," the District Court found the CBA's no-strike pledge to be knowing, voluntary, and binding on Barnard as a union member. *Barnard*, 194 F. Supp. 3d at 343-44.

Barnard does not challenge the integrity of the collective bargaining process, but contends that the CBA does not meet the "clear and unmistakable" standard for a waiver of rights that is articulated in *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 80-81 (1998). More specifically, Barnard contends that the CBA does not bar the judicial adjudication of her claims because it does not explicitly reference the First Amendment or § 1983. In *Wright*, the Supreme Court held that an arbitration clause in a CBA did not clearly and unmistakably waive a union employee's right to present to a court his claims under the Americans with Disabilities Act where the clause at issue was "very general, providing for arbitration of '[m]atters under dispute,' . . . which could be understood to mean matters in dispute under the contract. And the remainder of the contract contains no explicit incorporation of statutory antidiscrimination requirements." *Id.* at 80. In the wake of *Wright*, the Second Circuit held that a general arbitration clause will operate as a

4

waiver of an employee's right to judicial access only when combined with "an explicit incorporation of the statutory anti-discrimination requirements . . . . Courts agree that specific incorporation requires identifying the antidiscrimination statutes by name or citation." *Rogers v. N.Y. Univ.*, 220 F.3d 73, 76 (2d Cir. 2000), *abrogated on other grounds by 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009).

Any "name or citation" requirement is inapplicable here. The concern animating *Wright* and its progeny is the denial of judicial access to union employees where an arbitration clause does not clearly reach claims unrelated to the substantive provisions of a CBA. In contrast, the no-strike pledge at issue here is a core provision of the CBA and it is unequivocal. In exchange for the County's promise not to lock out union employees, *see* CBA Art. 2. § 2 (A57), the employees waive the right to participate in work stoppages and sympathy strikes and, moreover, agree that the County may take disciplinary action for noncompliance. This waiver is "clear and unmistakable" whatever Barnard's choice of forum or formulation of her legal claims. This Circuit has long held that a union may expressly or implicitly waive an individual employee's constitutional rights in the context of the collective bargaining process, *see Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 826-29 (3d Cir. 1991) (en banc) (union waived employees' Fourth Amendment rights implicated by consenting to drug testing), and Barnard has not articulated a valid reason why she should be exempted from the no-strike pledge of the CBA.[3] Consequently, the order of the District Court will be affirmed.

---

[3] Barnard also suggests that the CBA cannot bind her because she did not personally sign or otherwise formally authorize an agreement to waive her federal claims.

Imposing a requirement that a union attain the personal endorsement of members for the terms of a CBA would be antithetical to the very essence of *collective* bargaining. "It is clearly established that all terms of a collective bargaining agreement . . . are binding on the individual employees represented by the union." *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 168 (3d Cir. 1999); *see also Michota v. Anheuser-Busch, Inc. (Budweiser)*, 755 F.2d 330, 335 (3d Cir. 1985) ("[W]e have twice before held that the individual members of a union are bound by the terms of a no-strike clause in a collective bargaining agreement.").