Pizzarotti, LLC v X-Treme Concrete Inc. (2022 NY Slip Op 03085)

Pizzarotti, LLC v X-Treme Concrete Inc.

2022 NY Slip Op 03085

Decided on May 10, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 10, 2022

Before: Kern, J.P., Moulton, Rodriguez, Pitt, Higgitt, JJ. 

Index No. 655471/17 451148/18 Appeal No. 15586 Case No. 2021-02419 

[*1]Pizzarotti, LLC, Plaintiff-Respondent,
v
X-Treme Concrete Inc. Also Known as Xtreme Concrete Inc. et al., Defendants-Appellants.
Engineered Devices Corp., Plaintiff,
v
Xtreme Concrete Inc. et al., Defendants.

Pollack, Pollack, Isaac & DeCicco, LLP, New York (Brian J. Isaac of counsel), for appellants.
Peckar & Abramson, P.C., New York (Puja Sharma of counsel), for respondent.

Order, Supreme Court, New York County (Frank P. Nervo, J.), entered April 1, 2021, which, insofar as appealed from, granted plaintiff's motion for summary judgment dismissing the counterclaims, unanimously affirmed, without costs.
Defendant/counterclaim plaintiff Xtreme Concrete's counterclaim for delay damages was properly dismissed as barred by the subcontract's no damages for delay provision. Contrary to Xtreme's assertion that it seeks damages for delays not within the parties' contemplation at the time the subcontract was entered into, the cause of the subject delay — incomplete drawings — was expressly mentioned in the contract as a possibility and was therefore, "by definition, 'contemplated'" (LoDuca Assoc., Inc. v PMS Constr. Mgt. Corp., 91 AD3d 485, 485 [1st Dept 2012]).
Xtreme's breach of contract counterclaim was also properly dismissed as barred by the waivers and releases of lien executed by Xtreme. Pursuant to its subcontract, Xtreme was required to, and did, execute waivers and releases of lien in connection with receiving progress payments. Specifically, between June 2016 and February 2017, Xtreme submitted eight requisitions for payment. With each requisition, Xtreme executed a waiver and release of lien. As relevant here, the last, February 2017 waiver acknowledged that Xtreme had been paid in full through the date of the waiver and release, provided the amount of such payment and further provided that, conditioned solely on payment of the requisitioned amount, Xtreme waived and released all claims whatsoever, whether in law or in equity, arising in connection with its work up through the date of the waiver of lien and release. Each waiver and release executed after September 2016—including the last waiver—further provided, in capital letters, that Xtreme "AGREES THAT THIS WAIVER OF LIEN AND RELEASE IS NEITHER A RECEIPT FOR PAYMENT NOR A CONDITION PRECEDENT TO PAYMENT, BUT A KNOWING AND WILLFUL ACKNOWLEDGEMENT THAT SUBCONTRACTOR HAS BEEN FULLY PAID . . . THROUGH THE ABOVE-REFERENCED DATE." Xtreme's delay and extra work claims arose prior to February 2017, when the last waiver and release was signed, and Xtreme does not dispute that it was paid in full for all requisitions it submitted.
Stated differently, even though the waivers' enforceability as to each requisition period—including as to the last requisition period ending February 16, 2017—was "conditioned solely upon receipt of" the payment requested for such period, Xtreme's claim for breach of contract still lacks merit. As noted above, the content of each successive waiver and release after September 2016 released claims arising under prior requisitions. Moreover, Xtreme does not substantively dispute that it was paid in full for each requisition. Accordingly, as applied to the last, February 2017 waiver, claims arising from earlier periods up to January 16, 2017 were waived upon the waiver's execution, and Xtreme's reliance on, for example, change orders from January[*2], August, and December of 2016 therefore fails. At any rate, Xtreme's position on appeal, that the waivers are categorically unenforceable under the circumstances, is unavailing.
Thus, Xtreme's breach of contract counterclaim is barred by the unambiguous language of the releases themselves. Contrary to its assertions, there is no evidence of any conduct on the part of plaintiff demonstrating that plaintiff intended to treat the clear and unambiguous waivers and releases as mere receipts of progress payments (cf. West End Interiors v Aim Constr. & Contr. Corp., 286 AD2d 250, 251-252 [1st Dept 2001]; Penava Mech. Corp. v Afgo Mech. Servs., Inc., 71 AD3d 493, 495 [1st Dept 2010]).
The quantum meruit and unjust enrichment counterclaims were correctly dismissed because the parties have a written contract governing the same subject matter (see Curtis Props. Corp. v Greif Cos., 236 AD2d 237, 239 [1st Dept 1997]). The Lien Law counterclaims were correctly dismissed because they were not brought as a class action claim and failed to set forth any evidentiary facts in support of the claim (see Matros Automated Elec. Const. Corp. v Libman, 37 AD3d 313 [1st Dept 2007]).
We have considered the parties' remaining arguments and find them unavailing. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 10, 2022