| Malcher v Theatre Refreshment Co. of N.Y. |
|:---:|
| 2024 NY Slip Op 30605(U) |
| February 27, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 150046/2023 |
| Judge: Dakota D. Ramseur |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: <u>HON. DAKOTA D. RAMSEUR</u>          PART          34M

*Justice*

-----------------------------------------------------------------------X

OLAF MALCHER,

                    Plaintiff,

          - v -

THEATRE REFRESHMENT CO. OF NEW YORK, LENNY
LOWENGRUB

                    Defendant.

-----------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 150046/2023 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31

were read on this motion to/for          <u>ORDER MAINTAIN CLASS ACTION</u>          .

          In January 2023, plaintiff Olaf Malcher commenced this Labor Law class action against his employer, Theatre Refreshment Co. of New York, and its owner and CEO, Lenny Lowengrub. He alleges that defendants failed to pay New York's basic minimum wage and provide a proper wage statement, improperly (and without sufficient notice) claimed a tip credit for his work, and unlawfully retained gratuities belonging to employers. In addition, plaintiff alleges that defendants retaliated against him after complaining about these policies and practices. His causes of action arise under §§ 146-1.3, 146-2.2, and 146-2.9 of the New York Code, Rules, and Regulations Law and §§ 195.3, 196-d, 215, and 652 of the New York Labor Law. In this motion sequence (001), which defendants oppose, plaintiff moves pursuant to CPLR 901 and 902 for class certification. The proposed class consists of "all individuals who have worked for Theatre Refreshment Co. of New York as a bartender, server, and/or other comparable tipped position in New York at any time from January 2, 2017, to the present." (NYSCEF doc. no. 16 at 1, <u>proposed notice to class</u>.) For the following reasons, plaintiff's motion is granted.

## BACKGROUND

          Plaintiff has worked as a bartender with the Theatre Refreshment Co. of New York since approximately December 2012. During this time, he has bartended numerous Broadway performances at various theaters. From 2017 through March 2020, when Broadway closed due to the COVID-19 pandemic, plaintiff primarily worked at the Majestic Theatre, which housed "Phantom of the Opera." (NYSCEF doc. no. 17 at ¶ 9, <u>Malcher affidavit</u>.) While there, he worked an average of 3 hours and 45 minutes per shift. In September 2021, after Broadway reopened, they assigned him to the Gerald Schoenfeld Theatre for performances of "Come From Away." (*Id*. at ¶ 10.) From October 4, 2022, until January 15, 2023, he bartended at the Lyceum Theatre. (*Id*. at ¶ 11.) At both the Gerald Schoenfeld and Lyceum Theatres, since the

**150046/2023   MALCHER, OLAF vs. THEATRE REFRESHMENT CO. OF NEW YORK ET AL**          **Page 1 of 5**
**Motion No.  001**

1 of 5

[* 1]

performances did not have intermissions, plaintiff worked on average 2 hours and 15 minutes per shift. (*Id.* at ¶¶ 10-11.) Thereafter, he worked at the Shubert Theatre from January 16, 2023, to May 14, 2023, and the Barrymore Theatre from May 15, 2023, onward. (*Id.* at ¶¶ 12-13.) At these theaters, plaintiff worked average shifts of 3 hours 45 minutes and 3 hours 30 minutes, respectively. (*Id.*) He avers that he regularly worked eight shifts per week throughout his employment at each theater. (*Id.* at ¶ 14.) In addition to the time spent bartending, plaintiff alleges that he was required to spend 45 to 75 minutes per shift setting up, preparing/restocking for intermission, and breaking down the theaters' bars. (*Id.* at ¶ 16.)

Per the collective bargaining agreement between plaintiff's union (the United Food and Commercial Workers Union Local 1245, AFL-CIO) and defendants, effective from January 1, 2017, to December 31, 2020, plaintiff was compensated at a piece rate of $23.75 per shift, rising each year by $.50 per shift until 2019. (*Id.* at ¶ 18; NYSCEF doc. no. 23 at 2-3, <u>collective bargaining agreement</u>.) So, while in 2017, he was paid $23.75 per shift and $190 per week for eight shifts, in 2018 and 2019, the piece rate increased to $24.25 and $24.75, and total compensation per week to $194 and $198. (*Id.*; NYSCEF doc. no. 17 at ¶18.) In 2020, the parties agreed to a new collective bargaining agreement, in which the piece rate increased by 2.5% percent each year from 2020-2023. (*See* NYSCEF doc. no. 23 at 13-14.) As such, plaintiff avers that he was paid $202.95 per week in 2020, $208 in 2021, and $213.20 in 2022. (NYSCEF doc. no. 17 at ¶ 18.) Accounting for the number of hours worked per week, however, plaintiff calculates he was compensated at an effective hourly rate between $6.30 and $7 from 2017 through 2021, and between $11.50 and $11.84 onward—all of which are rates below New York's basic minimum wage. (NYSCEF doc. no. 17 at ¶ 18.) In addition, plaintiff alleges that defendants neither advised him that they were taking a tip credit nor provided him with accurate wage statements reflecting such credits. (NYSCEF doc. no. 1 at ¶ 41, 51.) Lastly, he alleges that defendants operated an unlawful tip pool, in which bar managers—who exercised significant authority over employees by authorizing them to clock out, counting and distributing tips, and disciplining employees—participated in and received an equal portion of the tips as the bartenders themselves. (*Id.* at ¶ 15.)

As to the putative class, in his affidavit, plaintiff alleges (and defendants do not deny) that Theatre Refreshment operates concession stands at 18 different Broadway theaters, each having at least two bartenders at all times. (*Id.* at ¶ 24.) Accordingly, plaintiff estimates that the potential class of employees harmed by defendants' compensation policies under the collective bargaining agreements includes at least 60 individuals. (*Id.*)

On the instant motion, plaintiff contends he has demonstrated the five prerequisites—numerosity, commonality, typicality, representative, and superiority—enumerated by CPLR 901 and 902 for class certification. In opposition, defendants contend that (1) the collective bargaining agreements' grievance procedures require plaintiff to submit this matter (and all class claims) to an arbitrator, (2) if the Court is to grant class certification, the class must be limited solely to bartenders—not servers or other tipped employees—and (3) the class may not seek statutory penalties for alleged violations of New York Labor Law. As described below, the Court finds argument (1) unpersuasive but modifies the definition of the proposed class based on arguments (2) and (3).

**150046/2023   MALCHER, OLAF vs. THEATRE REFRESHMENT CO. OF NEW YORK ET AL**          **Page 2 of 5**
Motion No.  001

2 of 5

[* 2]

## DISCUSSION

CPLR 902 provides that a class action may only be maintained if the five prerequisites promulgated by CPLR 901 (a) are met. (*Pludeman v Northern Leasing Sys., Inc.*, 74 AD3d 420, 421 [1st Dept 2010]; CPLR 902.) These prerequisites are: (a) (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) questions of law or fact common to the class predominate over questions of law or fact affecting individual class members (commonality); (3) the claims or defenses of the class representatives are typical of those in the class (typicality); (4) the class representatives will fairly and accurately protect the interest of the class; and (5) a class action represents the superior method of adjudicating the controversy (superiority). (*Id.*; CPLR 901 [a].)

The party seeking class certification bears the burden of establishing the prerequisites provided by CPLR 901 (a) by tendering evidence in admissible form. (*Weinstein v Jenny Craig Operations, Inc.*, 138 AD3d 546, 547 [1st Dept 2016]; *Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d 481, 481 [1st Dept 2009].) Conclusory allegations are insufficient to satisfy the moving party's burden. (*Feder v Staten Island Hosp.*, 304 AD2d 470, 471 [1st Dept 2003]; *Pludeman*, 74 AD3d at 422.) Whether these prerequisites have been met and, thus, whether a lawsuit qualifies as a class action, rests within this Court's sound discretion. However, the Court must be mindful that class certification should be liberally construed. (*Kudinov*, 65 AD3d at 481.). (*Kudinov*, 65 AD3d at 481.) In doing so, the Court recognizes that "claims for uniform systemwide wage violations are particularly appropriate for class certification" since the cost of litigating individually often outweighs the value of the individual's claim. (*Andryeyeva v New York Health Care, Inc.*, 33 NY3d 152, 184 [2019].) Here, plaintiff has undoubtedly met each of CPLR 901's prerequisites.

While there is neither a "mechanical test" to determine whether a proposed class is so numerous as to make joinder of all members impractical nor a predetermined minimum number of class members to satisfy the rule, courts routinely grant class certification when there are around 40 members. (*See Borden v 400 E. 55th St. Assoc., L.P.*, 24 NY3d 382, 399 [2014] [finding CPLR 901 mirrors Rule 23 of the Federal Rules of Civil Procedure, whereby "numerosity is presumed at a level of 40 members"], citing *Consol Rail Corp. v Town of Hyde Park*, 47 F3d 473, 483 [2d Cir. 1995]; *Caesar v Chemical Bank*, 66 NY2d 698, 700 [1985] [affirmed a lower court's grant of class certification in a class consisting of 39 bank employees]; *Globe Surgical Supply v GEICO Ins. Co.*, 59 AD3d 129, 137-138 [2d Dept 2008] [finding numerosity requirement satisfied where the proposed class was "at a minimum between 10 and 100 [class members]"].) Plaintiff's estimation that the proposed class consists of at least 60 members clearly meets the above threshold and is supported by (1) sworn testimony based on his work at five of defendants' 18 theaters over six years, and (2) two collective bargaining agreements that cover the remaining 13 theaters. Defendants have not proffered any reason to believe the actual number of class members is any lower. Similarly, the Court finds that questions of fact and law common to the class—whether defendants paid minimum wage, properly took wage credits, gave notice thereof, and operated an unlawful tip pool—predominate over any questions raised by particular individuals. Same for the typicality prerequisite: plaintiff

has demonstrated that his claims and those of the proposed class arise out of a common business practice or course of conduct. Lastly, defendants do not suggest that plaintiff cannot adequately represent the interests of the class or proffer a reason why class action is not the super method for resolving this dispute.

As described above, defendants' opposition is based on the collective bargaining agreements, which purport to require plaintiff—as a union member—to submit to mandatory arbitration. The relevant language is identical in both agreements and provides:

> "(A) In the event a dispute shall arise concerning the meaning or application of any term, condition, rule or regulation arising out of or in connection with this Agreement, or in connection with a discharge of an employee, said dispute or grieve will be resolved in the following manner: (B) Through discussion between the Employer and Union, then if a solution is not reached within five (5) days, either party may cause the matter to be submitted for arbitration…The decision of the arbitrator shall be final and binding upon both parties." (NYSCEF doc. no. 23 at 3, 15.)

Critically, this arbitration provision requires plaintiff to use the enumerated procedures only in a dispute "concerning the meaning or application of any term, condition, rule or regulation" arising out of the agreement; in other words, the provision does not apply to claims arising from statutory violation under the New York Labor Law. Where a collective bargaining agreement does not "clearly and unmistakably" waive the employees' statutory right to a judicial forum, plaintiff-employees are not obligated to arbitrate their statutory claims. (*Conde v Yeshiva Univ.*, 16 AD3d 185, 186 [1st Dept 2005], citing *Wright v Universal Mar. Serv. Corp.*, 525 US 70, 80 [1998]; *Lawrence v Sol G Atlas Realty Co., Inc.*, 841 F3d 81, 83 [2d Cir 2016] [holding that the "clear and unmistakable" standard requires "specific references in the CBA either to the statutes in question or to statutory causes of action generally."]) Since the above arbitration requirement does not reference the Labor Law or statutory causes of action more generally, plaintiff is not precluded from asserting his statutory rights in this judicial forum.

Notwithstanding the above, at this juncture, the Court limits the definition of the proposed class to "all individuals who have worked for Theatre Refreshment Co. of New York as *bartenders* in New York at any time from January 2, 2017, to the present." The previous definition included "server[s], and/or other comparable tipped position[s]." The collective bargaining agreement defines covered employees as "bartenders who work in concessions operated." (NYSCEF doc. no. 23 at 1.) Moreover, plaintiff's factual allegations are limited to defendants' compensation policies as they relate to bartenders and whether, in using the piece rate under the CBA, defendants compensated them above minimum wage. Plaintiff's complaint and affidavit offer no allegations of whether servers or other staff did not receive a minimum wage. Defendants' further position—that the class should limit the class to bartenders who worked for defendants after January 1, 2020, when the second collective agreement became effective—has no merit. Plaintiff has alleged Labor Law violations under both bargaining agreements. Lastly, plaintiff acknowledges that he cannot seek statutory penalties in this class

**150046/2023  MALCHER, OLAF vs. THEATRE REFRESHMENT CO. OF NEW YORK ET AL**          **Page 4 of 5**
**Motion No.  001**

4 of 5

[* 4]

action and does not oppose defendants' argument that any mention of statutory penalties must be removed from the class notice.

Accordingly, for the foregoing reason, it is hereby

ORDERED that plaintiff Olaf Malcher's motion for class certification pursuant to CPLR 901 and 902 is granted; and it is further

ORDERED that this action is certified as a class action, with the class being defined as follows: "All non-exempt employees who have worked for Theatre Refreshment Co. of New York and Lenny Lowengrub as bartenders at any time from January 2, 2017, to the present"; and it is further

ORDERED that plaintiff Malcher is appointed Lead Plaintiff and Class Representative; and it is further

ORDERED that Douglas B. Lipsky, Esq., of Lipsky Lowe LLP, shall serve as class counsel; and it is further

ORDERED that counsel for the Class submit to the Court for its approval the text of a proposed Notice to the Class, including an opt-out provision, that adheres to the class definition described above within thirty (30) days; and it is further

ORDERED that counsel for the parties shall appear at 60 Centre Street, Courtroom 341, New York, New York at 9:30 a.m. on March 12, 2024, for a preliminary conference with the Court; and it is further

ORDERED that counsel for plaintiffs shall serve a copy of this order, along with notice of entry, on all parties within ten (10) days of entry.

This constitutes the Decision and Order of the Court.

| 2/27/2023 | | | | |
|-----------|---|---|---|---|
| **DATE** | | | DAKOTA D. RAMSEUR, J.S.C. | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|------------|---|---------------|---|----------------------|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**150046/2023   MALCHER, OLAF vs. THEATRE REFRESHMENT CO. OF NEW YORK ET AL**
**Motion No.  001**

Page 5 of 5

5 of 5

[* 5]